**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| CHRISTIAN COFFEY, STEPHANIE COFFEY, and PAUL COFFEY, | ) | 3:23-CV-897 (SVN) |
| _Plaintiffs_, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CHOATE ROSEMARY HALL, in its official capacity; ELLEN DEVINE, in her individual and official capacity; LAURA LYNN VAN MIERLO, in her individual and official capacity; MIKE VELEZ, in his individual and official capacity; and DOES 1-20, in their individual and official capacities, | ) | September 12, 2025 |
| _Defendants_. | ) | |

## RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Sarala V. Nagala, United States District Judge.

In this action,  Plaintiffs Christian Coffey ("Christian"), and his parents, Stephanie Coffey ("Stephanie") and Paul Coffey ("Paul"), assert seven claims against Defendants Choate Rosemary Hall ("Choate") and Choate employees Ellen Devine, Laura Lynn van Mierlo, Mike Velez, and Doe Defendants 1-20 ("Doe Defendants") related to events that occurred when Christian was enrolled as a student at Choate in 2022.  More specifically, Plaintiffs assert (1) Choate violated Title III of the Americans with Disabilities Act ("ADA") by discriminating against Christian based on his disability and by failing to accommodate his disability; (2) all Defendants falsely imprisoned Christian; (3) all Defendants were "grossly negligent" in their interactions with Christian in relation to the relevant events; (4) Choate breached its contract with all Plaintiffs; (5) Choate breached its express warranty that it would prioritize health and safety on campus as to all Plaintiffs; (6) Choate engaged in unfair or deceptive trade or commerce practices in violation of

the Connecticut Unfair Trade Practices Act ("CUTPA"); and (7) all Defendants intentionally inflicted emotional distress upon Christian.

Defendants seek summary judgment on all claims, contending primarily that, based on the undisputed material facts, Plaintiffs' claims lack both a factual and a legal basis. Defs.' Mot. for Summ. J., ECF No. 84-19. Plaintiffs oppose Defendants' motion. Pls.' Opp. Br., ECF No. 94. For the reasons set forth below, Defendants' motion for summary judgment is GRANTED as to all of Plaintiffs' claims.

## I.    FACTUAL AND PROCEDURAL BACKGROUND[1]

### A.    Christian's Enrollment at Choate

Choate operates a boarding and day school in Wallingford, Connecticut that serves approximately 850 high school and post-graduate students. Pls.' L.R. 56(a)2 St. ¶ 1. In 2022, approximately 75 percent of students were boarding students who lived on campus in one of its 30 residential houses. *Id.* ¶¶ 2, 4.

Christian, a Canadian citizen, was enrolled at Choate for his 5th form (junior) and 6th form (senior) years of high school from 2020 until April of 2022, when he withdrew from Choate. *Id.* ¶¶ 14, 17, 18, 31, 343; *see also* ECF No. 84-19 at 2–3. Christian turned nineteen years old in February of 2022. Pls.' L.R. 56(a)2 St. ¶ 20. Each year Christian was enrolled at Choate, his parents, Plaintiffs Paul and Stephanie, signed enrollment contracts. *Id.* ¶¶ 21–22. The enrollment contracts required all Plaintiffs to read the Student Handbook containing the school policies and procedures. *See* Defs.' Ex. 8, ECF No. 87-8, at 2; Defs.' Ex. 9, ECF No. 87-9, at 3. Stephanie and Christian acknowledge they read and understood the Student Handbook. Pls.' L.R. 56(a)2 St. ¶¶

---

[1] The factual background is taken primarily from Plaintiffs' Local Rule 56(a)2 Statement, ECF No. 93 ("Pls.' L.R. 56(a)2 St."). While ECF No. 93 is titled "Defendants' Statement of Undisputed Facts," it was filed by Plaintiffs and clearly reflects Plaintiffs' responses to Defendants' Local Rule 56(a)1 Statement. The facts are undisputed, unless otherwise indicated.

28, 30.[2]  The enrollment contracts contain an integration clause, providing that it contained all of the agreements between the parties.  *See* ECF No. 87-8 at 3; ECF No. 87-9 at 4.

The Student Handbook, in turn, "explains that Choate has extensive discretion to regulate student conduct and that this discretion includes restrictions on what students may do in the campus residences and when students may be restricted from campus or dismissed from the school entirely."  Pls.' L.R. 56(a)2 St. ¶ 40.  It also indicates that the Dean of Students, Defendant Velez, oversees "the implementation of administrative, counseling and disciplinary responses to student behaviors."  *Id.* ¶ 44.  Choate, through the Dean of Students, "reserves the right to require a student to withdraw at any time when the student's behavior or performance has demonstrated an inability or an unwillingness to function successfully and cooperatively within the academic and/or social expectations."  *Id.* ¶ 41; *see also* Defs.' Ex. 24, ECF No. 87-24, at 20.[3]  Christian signed an acknowledgment in September of 2021 that he had met with his advisor, non-party Thomas White, and reviewed the major school rules and expectations that were set forth in the Student Handbook.  *Id.* ¶ 38.

Before Christian enrolled at Choate, Plaintiffs informed the school that Christian was diagnosed with attention deficit hyperactivity disorder ("ADHD"), provided medical information about his diagnosis and his use of a prescription medication to treat his ADHD, and sought and received academic accommodations for him.  *Id.* ¶¶ 47–48, 51–52, 59.  Defendants contend that nothing in Christian's medical information or requests for accommodation indicated he had "medical behavioral control issues stemming from ADHD" or that "his ADHD affected his ability to control his behavior or conform his behavior to school expectations with or without medication."

---

[2] Paul stated he did not read or review the enrollment contracts or Student Handbook, but instead relied on Stephanie's review of these documents.  *Id.* ¶ 25.

[3] Plaintiffs dispute this fact in part, claiming that "[t]his statement does not maintain the right to unlawful practices by Choate and its employees and agents."  *Id.* ¶ 41.

*Id.* ¶¶ 50, 58.  Plaintiffs dispute this assertion insofar as they state that he "had a plan in place that provided for deescalating" and that "[t]he parties worked together to assist Christian as a result of his ADHD," without pointing to any evidence supporting these statements or providing details about any such plan.  *Id.*[4]

As part of his ADHD management, Christian was prescribed a medication called Vyvanse, which is a stimulant that helps with concentration and focus.  *Id.* ¶¶ 59–60.  While he was enrolled at Choate, the Choate Health Center provided him with a one-week supply of Vyvanse at a time, which he self-administered.  *Id.* ¶ 63.  The parties contest whether Christian was always provided with is medicine when requested, but Defendants assert, and Plaintiffs do not deny, that he did not take his medication on February 27, 2022—a relevant date, as discussed below.  *Id.* ¶ 64.  Defendants contend Christian did not take his medication that day because he had slept in, and did not want to take it later in the day because it would affect his sleep that night, which is supported by Christian's deposition testimony.  *Id.*; *see also* Christian Coffey Dep. Tr., ECF No. 84-4, at 9:24–10:6.  Plaintiffs deny this fact as "untrue," asserting, without citation to any evidence, that Christian was not provided with his medication "on multiple days."  Pls.' L.R. 56(a)2 St. ¶ 64.

B.  <u>Events During Spring Semester 2022</u>

During the 2021-2022 academic year, Christian resided in Edsall House, a 6th form residence hall.  *Id.* ¶ 73.  Two residential advisors, Defendant Ellen Devine and non-party White, were responsible for students in Edsall, including ensuring that they followed the residence hall rules and addressing student concerns.  *Id.* ¶¶ 74, 76.

---

[4] Under Local Rule 56(a)3, each denial in a non-movant's Local Rule 56(a)2 Statement "must be followed by a specific citation to (1) the affidavit of a witness competent to testify as to the facts at trial, or (2) other evidence that would be admissible at trial."  The "[f]ailure to provide specific citations to evidence in the record as required by this Local Rule may result in the Court deeming admitted certain facts that are supported by the evidence in accordance with Local Rule 56(a)1" or the Court imposing other sanctions.  Here, the Court deems this fact—and many others that are denied without any citation to any evidence whatsoever—admissible, as they are supported by the evidentiary record provided by Defendants.

During the 2022 spring semester, Christian experienced several incidents in his residence hall. First, at a house meeting held by Devine and White on January 23, 2022, Christian and another student "got into a verbal altercation which caused the two residential advisors to end the meeting prematurely." *Id.* ¶¶ 92, 94. As part of this altercation, Defendants assert that Christian "shouted at Devine, told her to shut up, and pushed past her to leave the meeting." *Id.* ¶ 97. Plaintiffs deny that Christian pushed her, yelled at her, or told her to shut up. *Id.* ¶¶ 97, 301. Following this incident, Choate responded in accordance with its policies, and both students were issued an Honor Code warning—the lowest form of discipline—by the Deans Group (a group consisting of several Form Deans, the Dean of Students, the Associate Dean of Students, and the Day Student Director). *Id.* ¶¶ 100–06, 120. Defendant van Mierlo, the 6th Form Student Dean, *id.* ¶ 19, met with Christian to discuss his honor code violation and expectations, *id.* ¶ 119, and this violation was reported to Paul and Stephanie on or around February 25, 2022. *Id.* ¶ 122.

Second, on February 27, 2022, Devine found Christian running in the residence hall after she heard a loud noise. *Id.* ¶ 124. Christian alleged that another student had stolen his candy and became angry and frustrated as Devine inquired about what was going on. *Id.* Plaintiffs allege that Devine inappropriately yelled at Christian as part of this interaction. *Id.* ¶ 314. In a subsequent meeting with both Devine and White, Defendants allege that Christian "expressed anger and upset"; Plaintiffs concede that Christian *was* angry and upset, but deny that he expressed as much in an inappropriate manner. *Id.* ¶¶ 124–25. Plaintiffs admit, however, that Christian called his mother Stephanie at this time, and she heard him swearing. *Id.* ¶ 126.

Seemingly as part of that call, White informed Stephanie that he was going to send Christian to the Health Center, as he was concerned that Christian could not calm down. *Id.* ¶ 127. In addition to providing medical and mental health services to students, the Health Center is used

to provide temporary alternative housing for students who are not ill but who need alternative housing, such as if they are undergoing an investigation of misconduct or if their campus residence is closed but the Health Center is open.  *Id.* ¶¶ 150–52.[5]  Defendants assert—and Plaintiffs contest—that White permitted Christian to go to him room to collect items to bring with him to the Health Center.  *Id.* ¶¶ 128, 321.  Christian was escorted to the Health Center by campus safety officers and White.  *Id.*  ¶ 129.  The parties dispute whether Christian voluntarily agreed to go to the Health Center, as Plaintiffs assert that he was never given an option not to go (without citing evidence to support this assertion).  *Id.* ¶ 131.  Defendants assert that had he refused to go, he may have faced discipline, but would not have been physically forced to go.  *Id.* ¶ 132.

Upon arriving at the Health Center, Christian again spoke to Stephanie and continued swearing and demonstrating that he was upset and agitated.  *Id.* ¶¶ 155–56.  Health Center records indicate that he was monitored throughout the night of February 27, 2022.  *Id.* ¶ 157.  The next morning when van Mierlo came to check on him, he remained agitated and angry.  *Id.* ¶ 160–61.  Van Mierlo communicated his agitation and her concern to Stephanie via email, which Stephanie acknowledged and  seemed to attribute to events "going on over the [ ] past two weeks on campus."  *See* Defs.' Ex. 21, ECF No. 84-14, at 2–3.  Nonetheless, Plaintiffs allege Christian was agitated because he was being held against his will and not provided his medication, but they again do not cite any evidence to support this allegation.  Pls.' L.R. 56(a)2 St.  ¶ 161.

On February 28, 2022, Christian was permitted to go to his off-campus physical therapy appointment, was provided lunch, had a second meeting with van Mierlo, met with Velez, and spoke with Dr. Francisco Lopez, the Director of Counseling at Choate, and Dr. Kaplan, the school

---

[5] Plaintiffs deny these facts, claiming, without citation to any evidence, that they are "unable to verify" them.  The Court deems these facts admitted as they are supported by Defendants' evidence, and notes that Plaintiffs could certainly have attempted to "verify" these facts during the lengthy discovery period in this case.

therapist. *Id.* ¶¶ 162–64, 166. Although Plaintiffs dispute whether Christian received his medication that day, *see id.* ¶¶ 167, 323–24, his own deposition testimony confirms that he did, in fact, receive it, albeit after a slight delay. S*ee* ECF No. 84-4 at 144:9–25, 145:1–9. Defendants contend that Christian reported to these adults that he had taken his medication by that afternoon, which Plaintiffs deny as "untrue," again without citation to any evidence whatsoever and in direct contradiction of Christian's own deposition testimony. Pls.' L.R. 56(a)2 St. ¶ 165; *see also* ECF No. 84-4, at 144:9–25, 145:1–9. Following these conversations and a conversation between Stephanie and Velez, it was determined that Christian could be discharged from the Health Center—but Velez determined that Christian could not return to Edsall until further review of the incident took place, so he would remain in the Health Center as alternate accommodations for a few days until the school's spring break. Pls.' L.R. 56(a)2 St. ¶¶ 169–71. While accompanied by van Mierlo, Christian was allowed to go to his room in Edsall to gather belongings. *Id.* ¶ 173.

While staying at the Health Center, Christian was free to move about the campus until curfew, when he, like all other students, was required to report back for the night. *Id.* ¶¶ 176–78. Indeed, during this stay, Christian went to the hockey rink, the dining hall, class, and the student center. *Id.* ¶ 179. Christian was also permitted to access his dorm room in Edsall while accompanied, which he did on March 2, 2022, to pack for the school break that started the following day. *Id.* ¶ 332. On March 1, 2022, Christian requested a pill for the morning of March 2, and that pill was provided to him on the morning of March 2. *Id.* ¶¶ 188–89.

By the end of that week, after further considering the February 27, 2022, incident, Choate determined that "Christian should not return to Choate as a boarding student at that time but could return as a day student if he agreed to participate in regular counseling to address the reasons for his behavioral outbursts." *Id.* ¶ 192. Plaintiffs agreed that Christian would reside locally with his

mother.  *Id.* ¶ 195.  Following review according to Choate policy and accounting for Christian's statement that he did not take his medication on February 27 as a mitigating factor, the Dean's Group issued Christian an Honor Code censure for his February 27 behavior.  *Id.* ¶ 198–99.

Third, in April of 2022, the Dean's office learned of a third incident involving Christian that included him putting his hands on another student in his dorm in February of 2022—which Plaintiffs characterize, again without citation to evidence, as simply "horsing around."  *Id.* ¶ 201. This incident was investigated, and Stephanie was informed Christian could face disciplinary consequences that would be reported to colleges.  *Id.* ¶¶ 202, 214, 216.  Before the Deans Group could reach any determination regarding possible discipline, Christian withdrew from Choate and instead completed high school through educational services secured by his parents.  *Id.* ¶¶ 218, 220.  He then enrolled at his first-choice college.  *Id.* ¶ 220.

### C.  The Present Action

Plaintiffs filed this action in federal court in 2023, asserting what Defendants properly characterize as a "scattershot" of claimed violations of federal and state law.  *See* ECF No. 84-19 at 3.  Plaintiffs' only federal claim is brought under Title III of the ADA, for alleged disability discrimination and failure to make reasonable accommodations for Christian's ADHD disability. *See* Am. Compl., ECF No. 43.  Additionally, Plaintiffs allege claims for false imprisonment, "gross negligence," breach of contract and express warranty, violation of CUTPA, and intentional infliction of emotional distress.  *Id.*

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides, in relevant part, that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  A disputed fact is material only where the determination of the fact might affect the outcome of the lawsuit.  *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 248 (1986).  With respect to genuineness, "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden of establishing there is no genuine issue of material fact in dispute will be satisfied if the movant can point to an absence of evidence to support an essential element of the non-moving party's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The movant bears an initial burden of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323.  A movant, however, "need not prove a negative when it moves for summary judgment on an issue that the [non-movant] must prove at trial. It need only point to an absence of proof on [the non-movant's] part, and, at that point, [the non-movant] must 'designate specific facts showing that there is a genuine issue for trial.'" *Parker v. Sony Pictures Ent., Inc.*, 260 F.3d 100, 111 (2d Cir. 2001) (quoting *Celotex Corp.*, 477 U.S. at 324). The non-moving party, in order to defeat summary judgment, must come forward with evidence that would be sufficient to support a jury verdict in his or her favor. *Anderson*, 477 U.S. at 249. If the non-movant fails "to make a sufficient showing on an essential element of [their] case with respect to which [they have] the burden of proof," then the movant will be entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 323.

In considering a motion for summary judgment, a court "must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Kee v. City of New York*, 12 F.4th 150, 158 (2d Cir. 2021) (citation

and internal quotation marks omitted). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991).

## III.    COUNT ONE:  ADA FEDERAL LAW CLAIM

Plaintiffs assert only one claim under federal law:  that Choate violated Title III of the ADA by discriminating against Christian for a disability and failing to accommodate that disability. *See* ECF No. 43 at 15–17.  Because the Court finds that this claim is moot, Defendants' motion for summary judgment is granted as to Plaintiff Christian's ADA Title III claim.

Title III of the ADA prohibits discrimination "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation," including private schools.  42 U.S.C. §§ 12181(7)(J), 12182(a). Although Plaintiffs have requested monetary damages for their ADA claim, *see* ECF No. 43 at 17, the law provides that only injunctive relief is available under Title III of the ADA—an issue Plaintiffs now concede.  *See* 42 U.S.C. § 2000a-3(a)-(b); *Brief v. Albert Einstein Coll. of Med.*, 423 F. App'x 88, 90 (2d Cir. 2011) (noting that "Title III of the ADA . . . allows only for injunctive relief"); *Powell v. Nat'l Bd. of Med. Examiners*, 364 F.3d 79, 86 (2d Cir. 2004) ("A private individual may only obtain injunctive relief for violations of a right granted under Title III; he cannot recover damages."); ECF No. 94 at 31.  Thus, the Court construes the operative complaint as seeking only injunctive relief.

In the educational context, any ADA claim seeking injunctive relief becomes moot once a student graduates or otherwise discontinues enrollment and does not seek to re-enroll. *See Girard v. Lincoln Coll. of New England*, 27 F. Supp. 3d 289, 293 (D. Conn. 2014) (finding Title III ADA claim moot where plaintiff no longer attended the defendant school nor intended to return to that

school); *see also Brief*, 423 F. App'x at 90 ("As a preliminary matter, because [Plaintiff] has now graduated from medical school, received his M.D., and is participating in (or has already completed) a pediatrics residency program, his claim for injunctive relief is moot.").

It is undisputed that Christian is no longer a student at Choate and that he has demonstrated no intent to return to Choate as a student, as he has now completed high school and is enrolled in college. *See* Pls.' L.R. 56(a)2 St. ¶¶ 218, 220. Plaintiffs thus concede Christian's ADA claim seeking injunctive relief is moot. *See* ECF No. 84-19 at 22–23; ECF No. 94 at 31.

Without citing any law, Plaintiffs contend that the Court can still consider and rule on the merits of Christian's Title III ADA claim notwithstanding that they conceded the claim is moot. *See* ECF No. 94 at 31. But doing so would run afoul of the "live cases and controversies" requirement of Article III, Section 2 of the U.S. Constitution. *See Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90–91 (2013) ("We have repeatedly held that an actual controversy must exist not only at the time the complaint is filed, but through all stages of the litigation.") (internal quotation marks omitted)). Where a claim becomes moot, no actual controversy remains. *Id.* at 91. And absent an actual controversy, the Court has "no business deciding legal disputes or expounding on law." *Id.* at 90. Thus, the Court declines to consider the merits of Christian's moot ADA claim.

The only remaining dispute is whether Plaintiffs are entitled to attorney's fees on Christian's ADA claim. When a party prevails on an ADA claim, attorney's fees and costs may be awarded. 42 U.S.C. § 2000a-3(b). Without citing any law, Plaintiffs argue that even where the ADA claim is moot, "Plaintiff is entitled to a finding against Defendant [that his ADA rights were violated] and recovery of his attorney fees." ECF No. 94 at 31. But Plaintiffs are wrong. A party is not eligible to be awarded attorney's fees where a claim is dismissed as moot because they cannot be considered a "prevailing party." *See Buckhannon Bd. & Care Home, Inc. v. West Va.*

*Dep't of Health & Hum. Res.*, 532 U.S. 598, 600 (2001) (holding that a party is not entitled to attorney's fees as a prevailing party on a moot claim, even if its lawsuit "brought about a voluntary change in the defendant's conduct" that rendered the suit moot). As it is undisputed that Christian's ADA claim is moot, no Plaintiff is a prevailing party on that claim. Defendants are entitled to summary judgment on the claim, and Plaintiffs are not eligible to be awarded attorney's fees.

## IV.    STATE LAW CLAIMS

Defendants also seek summary judgment on Plaintiffs' state law claims for false imprisonment, "gross negligence," breach of contract, breach of express warranty, violation of CUTPA, and intentional infliction of emotional distress. As the parties agree the Court has diversity jurisdiction over these state law claims, the Court considers their merits.

A. Count Two:  False Imprisonment

For the reasons discussed below, Defendants' motion for summary judgment is granted as to Christian's false imprisonment claim.

False imprisonment is "the unlawful restraint by one person of the physical liberty of another." *Rivera v. Double A Transp., Inc.*, 248 Conn. 21, 31 (1999). "To prevail on a claim of false imprisonment, the plaintiff must prove that his physical liberty has been restrained by the defendant and that the restraint was against his will, that is, he did not consent to the restraint or acquiesce in it willingly." *Nodoushani v. S. Conn. State Univ.*, 152 Conn. App. 84, 92–93 (2014). In addition, because false imprisonment is an intentional tort, the plaintiff must prove that the defendant acted with the requisite intent in imposing that restraint. *Rivera*, 248 Conn. at 31. Specifically, "[a] person is not liable for false imprisonment unless his act is done for the purpose of imposing confinement, or with the knowledge that such confinement will, to a substantial

certainty, result from it." *Id.* (quoting 32 Am. Jur. 2d, False Imprisonment § 9); *see also Richardson v. Costco Wholesale Corp.*, 169 F. Supp. 2d 56, 61 (D. Conn. 2001).

Based on the undisputed material facts, the Court finds that Christian has failed to establish a claim of false imprisonment as a matter of law. First, although Christian was required to sleep at the Health Center for several evenings following the February 27, 2022, incident due to concern about his inability to calm down and Choate's subsequent determination that he could not return to his dorm unaccompanied pending investigation of the incident, undisputed evidence shows that his physical liberty was not restrained such that he could not leave the Health Center. *See* Pls.' L.R. 56(a)2 St. ¶¶ 127 (noting that Christian was being sent to the Health Center "out of concern for his inability to calm down"), 162 (noting that Christian went to an off-campus physical therapy appointment on February 28, 2022),[6] 175 (noting that Christian went to hockey practice, dinner, and the student center on February 28, 2022), 177 (noting that Christian had the same curfew as house residents), 178 (noting that except for returning to his residence hall, Christian was permitted to move about campus freely until curfew throughout the week), 179 (noting that while sleeping at the Health Center, Christian went to the dining hall, the student center, the hockey rink and several classes). Christian may not have been permitted to go to his dormitory unaccompanied, but Plaintiffs cite to no case law supporting the conclusion that an individual is falsely imprisoned when he is restricted from going to one specific place unaccompanied but is otherwise free to move about as he pleases. Because Christian was able to leave the Health Center to attend classes, practices, appointments, and meals, and was generally free to move about the campus with one

---

[6] Plaintiffs confusingly argue that Christian was not permitted to leave the Health Center on February 28, 2022, despite admitting that he left the Health Center that day to go to an off campus physical therapy appointment. *Compare* ECF No. 94 at 32 ("On Monday, February 28, 2022, Christian was not allowed to leave the Health Center.") *with* ECF No. 93 ¶ 162 (admitting that Christian went to an off-campus physical therapy appointment on February 28, 2022).

exception that required an escort, the Court finds that the undisputed materials facts show that Christian was not falsely imprisoned.[7]

Second, to the extent Christian asserts that he was falsely imprisoned because he would face disciplinary consequences if he refused to go to the Health Center, he is mistaken. A possibility of facing discipline for failing to comply with a request to stay in a particular area is insufficient to establish a claim for false imprisonment. *See Richardson*, 169 F. Supp. 2d at 61–62 ("Moral pressure or threat of losing one's job does not constitute a threat of force sufficient to establish that plaintiffs[] were involuntarily restrained"); *see also Wallace v. Bryant Sch. Dist.*, 46 F. Supp. 2d 863, 866 (E.D. Ark. 1999) (rejecting false imprisonment claim where student could have refused school official's directive that she spend choir period in the music library due to her disciplinary issues). Although Christian may have believed he would have faced consequences for refusing to go to the Health Center, such a belief is insufficient to establish grounds for a finding of false imprisonment.

Third, and finally, Defendants acted within their legal authority when they required Christian to go to and sleep at the Health Center following the February 27, 2022, incident. Christian and Stephanie affirmed that they had read the Student Handbook. *See* ECF No. 87-8 at 2; ECF No. 87-9 at 3. Relevant here and as Plaintiffs admit in their Local Rule 56(a)2 Statement, the Student Handbook provides "that Choate has extensive discretion to regulate student conduct and that this discretion includes restrictions on what students may do in the campus residences and when students may be restricted from campus or dismissed from the school entirely." Pls.' L.R. 56(a)2 St. ¶ 40; *see also generally* ECF No. 87-24 at 11 ("the School reserves the right to discipline or to separate from the School any student if it decides it is in the best interest of the School to do

---

[7] Additionally, Defendants point out that, as a nineteen-year-old, Christian was free to leave Choate at any time. *See* ECF No. 84-19 at 26.

so; for example, when a student's behavior or performance has demonstrated an inability or unwillingness to function successfully and cooperatively within the academic and/or social expectations, when a student fails to abide by the major school rules or the principles of integrity and honorable conduct, or when a student accumulates a series of minor offenses and/or a pattern of unexcused absences from school appointments."); *id.* at 20 ("The School, acting through the Dean of Students, reserves the right to require a student to withdraw at any time when the student's behavior or performance has demonstrated an inability or an unwillingness to function successfully and cooperatively within the academic and/or social expectations."); *id.* at 33–39 (describing restrictions and rules for residential students). In responding to Christian's reaction to the February 27, 2022, incident and in requiring him to sleep at the Health Center, Defendants were acting within their authority as agreed to by Plaintiffs in the enrollment process. Indeed, under the Student Handbook, Choate could have imposed much more severe restrictions than simply requiring him to sleep at the Health Center and requiring an escort if he needed to return to his residence hall.[8]

For these reasons, Christian's false imprisonment claim fails, and summary judgment is granted in Defendants' favor.

---

[8]To the extent Plaintiffs are claiming that Christian was falsely imprisoned because he was not permitted to leave between the night of February 27, 2022, and sometime in the afternoon of February 28, 2022, the Court also finds that the public policy implications of a finding of false imprisonment under these circumstances raise significant concerns. Educational institutions, and particularly residential educational institutions, must have discretion to require that students' behavior comports with certain standards to ensure all students remain safe and able to learn. Where a school is genuinely concerned that a student's behavior may pose a threat to health or safety, it is important that the school maintain the ability to direct certain action, such as requiring a student to go to a health center for observation. In this instance, Defendants did not act unreasonably by having Christian observed overnight in the Health Center. Defendants remained in contact with his parents on February 27 and 28. Christian was ultimately discharged on February 28 after seeing a school therapist and the Director of Counseling, and continued to reside in the Health Center per school policy with certain minimal restrictions on his movement. If Defendants' actions were considered false imprisonment, school personnel would be reluctant to direct students to appropriate health treatment, for fear of being sued. And, it bears mentioning again that Christian, as an adult, retained the ability to leave Choate at any time if he wished.

B.  Count Three: Gross Negligence

Next, Defendants' motion for summary judgment as to Plaintiff Christian's gross negligence claim also must be granted.

"Connecticut law 'does not recognize degrees of negligence and, consequently, does not recognize the tort of gross negligence as a separate basis of liability.'" *Riccio v. Bristol Hosp., Inc.*, 341 Conn. 772, 783–84 (2022) (quoting *Hanks* v. *Powder Ridge Rest. Corp.*, 276 Conn. 314, 337 (2005)); *see* ECF No. 94 at 34.   At oral argument, Plaintiffs conceded they cannot pursue a claim for gross negligence, and thus are pivoting to a claim of ordinary negligence.  The elements of an ordinary negligence claim are well-established:  (1) duty; (2) breach of that duty; (3) causation; and (4) actual injury.  *Jagger v. Mohawk Mountain Ski Area, Inc.*, 269 Conn. 672, 687 n.13 (2004).

Plaintiffs' negligence claims fail.  First, although Plaintiffs claim that Defendants owed Christian some type of heightened duty because he was a residential boarding student suffering from a disability, they cite to no authority to support that proposition.  *See* ECF No. 94 at 34.  Then, Plaintiffs' entire argument section on their negligence claim is conclusory, unsupported by either legal authority or citations to the record:

> Defendants' knowledge of Plaintiff's disabilities and failure to advise and assist Plaintiff through medication administration was negligent.  Plaintiff being housed in the Health Center against his will was negligent.  Plaintiff being brough[] up on disciplinary proceedings as a result of Defendants' actions further portrays the negligence of the Defendants.  Defendants' actions, coupled with their deficient policies and procedures caused Defendants to be negligent.

ECF No. 94 at 34–35.

With respect to Plaintiffs' argument that Defendants violated their duty to Christian when they "held [him] against his will in the infirmary and denied him access to his medication," ECF No. 43 ¶ 123, the Court finds that Defendants were not negligent for the same reasons Plaintiff

Christian's time sleeping at the Health Center did not constitute false imprisonment.  The undisputed evidence shows that Defendants conformed with their duty of care by requiring Christian to be evaluated and observed following an extended period of agitation, and that he agreed to go to the Health Center and was able to move about freely except when going to his residence hall, demonstrating that he was not being held against his will.  Plaintiffs provide no evidence that Defendants breached any duty to him in these actions.

To the extent Plaintiffs claim the individual Defendants breached a duty of care by failing to "assist" Christian "through medication administration," they have made no argument *why* this would be the case; nor have they alleged any facts suggesting that any of the individual Defendants, who were not medical staff, were involved in any decisions regarding the provision of Christian's medication.  Thus, any negligence claim in relation to his medication administration fails as to the individual defendants.

So too do such claims fail against Choate.  First, despite making assertions that he was deprived of his medication on multiple occasions, Plaintiffs fail to support these allegations with evidence.  *See, e.g.*, Pls.' L.R. 56(a)2 St. ¶¶ 64–65; ECF No. 94 at 34–35.  Second, although the parties' Local Rule Statements dispute whether Christian received his medication on February 28, 2022, *see* Pls.' L.R. 56(a)2 St. ¶ 167, Christian himself admitted that he did receive his medication on February 28, 2022, which further suggests that this claim is unsupported.  *See* ECF No. 84-4 at 144:9–25, 145:1–9.  Even if this fact were properly disputed, Plaintiffs have not provided evidence or legal authority to support the conclusion that Choate breached a duty to him in some way when a single Health Center staff member indicated she was not authorized to provide his medication (particularly where he was provided the medication a short time later).  And Plaintiffs also have not established that Christian was harmed by this denial of medication.  Instead, they rely on

conclusory allegations regarding the harm he experienced.  And finally, with respect to whether Defendants in any way deprived Christian of his medication on February 27, 2022, Christian himself testified that he *chose* not to take his medication that day because he woke up late, and did not want to take it later in the day because it would keep him up that night.  ECF No. 84-4 at 9:24–10:6.  On the record before the Court, no reasonable jury could conclude that Choate was negligent.

Finally, as to Plaintiffs' contention that Defendants were negligent because Christian was "brough[t] up on disciplinary proceedings as a result of Defendants' actions," Plaintiffs fail entirely to explain why this would be considered negligent or to provide evidence to support any such claim.  Moreover, the Student Handbook clearly permitted Defendants' reasonable course of action following Christian's behavior.  *See* ECF No. 87-24 at 11 (noting that Choate reserves the right to discipline a student if it believes that course of action is appropriate), *id.* at 20 (describing the role of the Deans Group in adjudication of major school rule violations), *id.* at 30 (describing possible consequences that could follow a Deans Group adjudication).

For these reasons, Defendants' motion for summary judgment is granted as to Plaintiffs' negligence claim.

C.  <u>Count Four: Breach of Contract</u>

Defendants' motion for summary judgment must also be granted as to Plaintiffs' claim for breach of contract.

Under Connecticut law, the "elements of a breach of contract claim are the formation of an agreement, performance by one party, breach of the agreement by the other party, and damages."  *AGW Sono Partners, LLC v. Downtown Soho, LLC*, 343 Conn. 309, 322 (2022) (citation omitted).  In the education context, courts have construed the basic legal relation between a student and a private educational institution as being contractual in nature.  *Burns v. Quinnipiac Univ.*, 120 Conn. App. 311, 320 (2010).  As is relevant here, to prevail on a breach of

18

contract claim against an educational institution, a plaintiff must show that "the educational institution failed to fulfil a specific contractual promise distinct from any overall obligation to offer a reasonable program." *Gupta v. New Britain Gen. Hosp.*, 239 Conn. 574, 593  (1996).

Because Plaintiffs fail to assert that Choate breached any specific element of the contract, summary judgment must be granted for Defendants.  Neither the amended complaint nor Plaintiffs' opposition to the motion for summary judgment identify specific provisions of the enrollment agreement that support any argument for breach of contract.  *See* ECF No. 43 ¶¶ 127–134; ECF No. 94 at 37.  Instead, they rely on broad allegations regarding Choate's alleged failures to provide health care or a safe educational environment.  *Id.*  But these allegations are neither supported by facts nor tied to the specific contract provisions that Choate allegedly breached.  "[G]eneral allegations of inadequacy" are insufficient to support a claim for breach of contract against an educational institution, as are generalized promotional statements.  *See Gupta*, 239 Conn. at 593; *Amable v. New School*, 551 F. Supp. 3d 299, 312 (S.D.N.Y. 2021)  (finding that "[t]hough [promotional] statement may indeed 'market[ ] [Defendant's] on-campus experience as a benefit of enrollment,' it also is a classic example of mere opinion or puffery that is too vague to be enforced as a contract") (internal quotation marks omitted); *see also* ECF No. 84-19 at 35–37 (citing additional cases).  A general statement from Choate's website regarding its commitment to health and safety cannot form the basis of a breach of contract claim.

To the extent Plaintiffs argue that Christian was denied an education while he was at the Health Center and that action constituted a breach of contract, that claim also fails.  Plaintiffs point to no evidence to support this conclusory assertion, and evidence in the record shows that Christian was, in fact, permitted to go to classes while sleeping at the Health Center.  *See* Pls.' L.R. 56(a)2 St. ¶¶ 179 (noting that Christian went to several classrooms while residing at the Health Center),

330 (noting that Christian left the Health Center to take an exam on March 2, 2022); 331 (admitting Christian was allowed to attend classes while staying at the Health Center). Thus, summary judgment must be granted for Defendants as to Plaintiffs' breach of contract claim.

D.  <u>Count Five: Breach of Express Warranty</u>

Summary judgment for Defendants is also warranted as to Plaintiffs' breach of express warranty claim.

"A plaintiff asserting a claim for breach of express warranty must show: (1) existence of the warranty; (2) breach of the warranty; and (3) damages proximately caused by the breach." *DiBlasi v. Smith & Nephew, Inc.,* No. 3:20-CV-566 (MPS), 2021 WL 619509, at *4 (D. Conn. Feb. 17, 2021) (citation and quotation marks omitted). "An express warranty is created when, among other things, the seller makes [a]ny affirmation of fact or promise to the buyer which relates to the goods and becomes part of the basis of the bargain." *Id.* (citation and quotation marks omitted). "Further, '[a]ny description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.'" *Id.* (citation omitted).

Because Plaintiffs have failed to establish than an express warranty existed, let alone that any express warranty was breached, summary judgment is appropriate. Plaintiffs' express warranty claim relies on a statement from Choate's website indicating that Choate "emphasizes the priority of health and safety on campus."[9]  ECF No. 43 ¶ 136.  But they provide no grounds to conclude that this generalized statement from Choate's website, that was not included in the fully integrated enrollment agreement, constitutes an express warranty.  First, they provide no evidence to support their conclusory assertions that they were aware of this statement when they chose to

---

[9] In their opposition to Defendants' motion for summary judgment, Plaintiffs also assert that an express warranty was breached where "Choate represented that Christian would be provided with an equal, transferrable education free of retaliation, harassment and discrimination based on his disabilities." ECF No. 94 at 38. But that allegation is not reflected in their breach of express warranty claim in the amended complaint. ECF No. 43 ¶¶ 135–41.

enroll Christian at Choate or that they relied on it in deciding to do so such that it became part of the basis for their bargain. *See DiBlasi*, 2021 WL 619509, at *4. Absent such evidence, any assertion that an express warranty existed fails. Second, a statement this broad generally fails to establish an express warranty. *Id.* (collecting cases standing for the proposition a statement that a product is "safe and effective for its intended use" is too broad to establish an express warranty). Much as a statement regarding the safety and efficacy of a product is too broad to establish an express warranty, so too is a statement that an institution prioritizes health and safety.

Even if that statement did constitute an express warranty, though, Defendants did not breach it as Plaintiffs allege, namely by "restraining Christian to an infirmary without access to medication, fresh clothes, or food." ECF No. 43 ¶ 140. The record before the Court shows that Christian was permitted to leave the Health Center, did have access to food, was able to return to his dormitory to obtain personal items, and had access to toiletries. Further, evidence shows that Defendants required Christian to go to the Health Center out of concern for his health so that he could be observed and evaluated, as he was unable to calm down following the February 27, 2022, incident. It is unclear how such action could constitute a breach of a warranty to prioritize students' health and safety when it was Christian's health and safety that motivated Defendants to move him to the Health Center.

For these reasons, summary judgment is appropriate as to Plaintiffs' breach of express warranty claim.

E.  <u>Count Six: CUTPA Claim</u>

The Court also grants Defendants summary judgment as to Plaintiffs' CUTPA claim.

As a general matter, CUTPA provides that "[n]o person shall engage in ... unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. § 42-110b(a). "Trade" and "commerce" are defined as the "advertising, the sale or rent or lease, the

offering for sale or rent or lease, or the distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value in this state." Conn. Gen. Stat. § 42-110a(4).  In assessing whether a CUTPA violation occurred, courts consider the following criteria:

> (1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers, [competitors or other businesspersons].

*Artie's Auto Body, Inc. v. Hartford Fire Ins. Co.*, 317 Conn. 602, 609–10 n.9 (2015).  A plaintiff may establish a CUTPA violation by showing it satisfies one prong of this test or by showing it satisfies each prong to a degree.  *Id.*; *see also Sanghavi v. Paul Revere Life Ins. Co*, 214 Conn. 303, 311–12 (1990).

Plaintiffs have failed to satisfy this standard.  Although somewhat unclear, it appears that Plaintiffs contend Choate engaged in deceptive practices for the same reason Plaintiffs allege they breached their contract and their express warranty—because they emphasized "the priority of health and safety on campus" on their website, *see* ECF No. 43 ¶ 145, but then treated Plaintiff Christian in "an unsafe manner when he was held in the Health Center against his will" and he was "forced to withdraw from the high school education boarding program in 2022," ECF No. 94 at 40–41.  As noted above, Plaintiffs fail to show how this statement was deceptive, as Choate took the action it felt was most appropriate to protect Christian's health and safety, and Plaintiffs have provided no evidence to support the assertion that he was held against his will, forced to withdraw from Choate, or otherwise harmed by these actions.

Plaintiffs also somewhat unclearly assert that they "can establish that Choates [sic] actions in promising and guaranteeing Christian an equal opportunity to an education, a degree in their

high school education program. [sic]" ECF No. 94 at 40. Assuming they are arguing that Choate broke that promise, their claim still cannot survive summary judgment as they have provided no evidence to support this claim and create a genuine dispute of material fact. For these reasons, summary judgment for Defendants is appropriate as to Plaintiffs' CUTPA claim.

     F. <u>Count Seven: Intentional Infliction of Emotional Distress</u>

     Finally, Christian's intentional infliction of emotional distress claim against all Defendants fails as a matter of law.

     A plaintiff claiming intentional infliction of emotional distress must establish four elements: "(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by plaintiff was severe." *Appleton v. Bd. of Educ. of the Town of Stonington*, 254 Conn. 205, 210 (2000) (internal quotation marks and citation omitted). "Liability for intentional infliction of emotional distress requires conduct exceeding all bounds of decent society and which is calculated to cause, and does cause, mental distress of a very serious kind. *DeLaurentis v. New Haven*, 220 Conn. 225, 267 (1991) (internal quotation marks omitted).

     Because Plaintiffs fail to establish that any Defendant acted with the requisite intent or engaged in extreme or outrageous conduct, summary judgment is appropriate as to their intentional infliction of emotional distress claim. Plaintiffs rely solely on conclusory allegations and unsupported factual assertions to support their claim that Defendants' conduct in relation to Christian rose to the level of intentional infliction of emotional distress. They repeat unsupported allegations about Christian being "locked in the Health Center and not being allowed to return to his dorm," *see* ECF No. 94 at 42, despite admitting that he was permitted to return to his dorm to obtain personal items and that he was permitted to attend hockey practice, go to a physical therapy

appointment, go to the dining hall, and attend class, *see, e.g.*, Pls.' L.R. 56(a)2 St. ¶¶ 175, 178–79, 329.  Thus, they undermine their own arguments regarding the extent to which the conduct was extreme or outrageous or that Defendants knew or should have known that it would cause emotional distress.  Plaintiffs provide no grounds to find that Defendants knew or should have known that simply preventing Christian from sleeping in his dormitory would have caused severe emotional distress, or that requiring him to sleep at the Health Center so that he could be monitored following a behavioral episode is in any way extreme or outrageous.  Absent such evidence or allegations, Plaintiffs' claim fails as a matter of law. Thus, summary judgment is appropriate.

## V.    CONCLUSION

For the reasons described herein, Defendants' motion for summary judgment is GRANTED in full.  The Clerk is directed to enter judgment for Defendants and close this case.


**SO ORDERED** at Hartford, Connecticut, this 12th day of September, 2025.


 */s/ Sarala V. Nagala*
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE